The final case, Schwartz v. DEA. May it please the court, I'm Will Havman from the Department of Justice on behalf of the DEA. The district court in this case erroneously concluded that a video that documents the entirety of a drug interdiction operation in one of the world's busiest hubs of drug trafficking activity wouldn't reveal anything new, even to an expert, about how the DEA investigates crime. That conclusion was profoundly mistaken, and the video at issue in this appeal exemplifies the type of record that Exemption 7e was designed to protect. Now, I should note at the outset that the record in this case does contain some sealed material, and I'll do my best to answer the court's questions with respect to that material with as much specificity as I can without divulging anything. But I think that it's fair to note at the outset that it stands to reason and should come as no surprise that a video that documents the entirety of a law enforcement operation reveals the techniques and procedures that the law enforcement agency involved applied during that operation. And, indeed, I do not think that my colleague seriously disputes that fact. I do not think that my colleague seriously disputes the fact that this video depicts law enforcement techniques and procedures. And, rather, what my colleague argues is that various YouTube clips and other videos found online reveal more or less the same thing. How do the exact flight pattern and positioning of the plane, how do they suggest techniques as opposed to circumstances of known area surveillance techniques? So, again, I'll do my best. We understand. So, as indicated in more detail, and I think it's paragraph 15 of the under seal declaration that we filed in district court, the flight pattern that the government uses in filming clandestinely as opposed to filming without making any attempt to hide from view is different. And that, you know, this court has defined law enforcement techniques and procedures as how law enforcement goes about investigating a crime. And one way that the DEA goes about investigating international drug trafficking is by conducting this sort of surveillance and attempting, at least for the bulk of the time of the recording, to hide from view. And so what the district court did with that, and I think what my colleague on the other side argues on appeal, is the district court pointed to a video that the DEA disclosed to the plaintiff in this case in a different FOIA matter involving a Jamaican operation in a residential neighborhood in Kingston. But we indicated in our under seal declaration that that recording was not filmed clandestinely and it didn't film any American law enforcement activity whatsoever. And the flight pattern of surveillance aircraft is simply different. And although it may not be clear to a layperson how those differ, it would be clear to drug traffickers. Well, it seems eminently plausible to me that if you watched a three hour video of a clandestine surveillance operation and you knew many things that I don't know, that the watching of that video could give you information about how a plane remains unseen during the period of its operation. There's a question as to whether that's still relevant here given that we are now only talking about a portion of the video as I understand it. But the government has an obligation to come forward with non-conclusory explanations of what the video reveals. And I'm left wondering after reading the briefs, and I'm hoping the parties can help me, as to whether the district court made a mistake in not hearing from an expert as the district court watched the video. And whether the expert had anything more to reveal than what was in the declaration itself. So we certainly think it would have been appropriate for the district court to hear from an expert as it was watching the video. As we indicated to the district court, we made a good faith effort to identify with specificity in the under seal declaration all of the techniques and procedures. Didn't you also say that all information relevant to the withholdings under Exemption 7E was in the declaration? We did say that. And we said that to the extent that the court had questions about the declaration, to the extent that the court had questions as it was viewing the video, we would be happy to provide an in-person account. And I think that the relevance of that fact comes out when in looking at the district court's opinion over and over again, the district court says things such as it was not apparent to the district court, or it was not clear to the district court how the video would disclose the claims, techniques, and procedures. And perhaps a specific example will help to illustrate the point. So in paragraph 38, which is at page 61 and 62 of the special appendix, the DEA explained, this is in its under seal declaration, the DEA explained that an expert could determine the number and the type of aircraft that were used in this operation and could therefore estimate the number of law enforcement personnel that were used in this operation. And the district court's response to that, and I have to paraphrase because part of the discussion was redacted, but the district court's response to that was essentially that it was not easy to determine the type of aircraft or the number of aircraft from the district court's review of the video. And in doing so, the district court appeared to make a factual error about the number of aircraft depicted. And so we think that that just betrays a sort of compromised analysis of the video. And again, we did our absolute best to provide as much specificity as we could in the under seal declaration. And to the extent the court had further questions, to the extent that certain things were not apparent to the court. You said as much as you could. What limited you? In the under seal declaration, nothing limited us. That's right. So there were other declarations. As much as you could is as much as you have. That's right. That's right. And so we believe that all of the material is there in the under seal declaration, which we have provided to the court on appeal. You submitted a seal declaration explaining that the model of the surveillance plane could be discerned based on the telemetry data displayed throughout the video. But wasn't that data redacted by the district court? So yes, I do want to clarify that the discussion that I raised earlier was not with respect to the surveillance aircraft, but with respect to the aircraft that were depicted in the video itself. But yes, the telemetric data was redacted ultimately by the district court, although tentatively. I think that there's a footnote in the district court's opinion that suggests that the court is willing to reconsider that judgment. And we think that certainly at the very least that information, which reveals the location of the target plane, or the location of the surveillance plane with respect to the various targets, certainly that is material that ought to be redacted. And again, so we have identified not just the surveillance techniques and procedures that are at issue in this case, but also we have a video here that documents a law enforcement operation. And it documents and it shows the number and type of aircraft that were used. It shows the on-the-ground techniques that were used during this extensively planned military-style operation. And it should come as no surprise that a video of that type would indeed reveal information that is sensitive. Well, let me ask this. I mean, you cite to and talk about Piper, which makes some sense to me. So maybe this will help. So the argument made from that case, I guess it's a district court case, is that it's widely known that polygraph examinations are used in law enforcement. So there's nothing that would fall with, there's nothing to protect as to that fact. But still, revealing the specifics as to a specific polygraph examination might reveal, would reveal, and it should be protected information about how the law enforcement structures a particular examination, maybe of a particular personality type and the pattern of the way in which the questions are asked. So there's specifics in the depiction of the polygraph would reveal those things. What I'm having difficulty with is I understand the concept that the revelation of a law enforcement operation, an interdiction effort, potentially dangerous interdiction effort involving multiple aircraft and many law enforcement personnel, the public depiction of that could reveal information about the way law enforcement plans such operations that could be confidential. But I am not as easily understanding from the affidavit and perusing the video what is depicted on the video that would, in an expert's eyes, reveal confidential information that is not already publicly known. Sure. So I'd be happy to address that in as much detail as I absolutely can. So the video will reveal the number of aircraft that were used in this operation and the type. And that is not information that the DEA or the federal government has ever released. And with it, drug traffickers or other experts could estimate the number of law enforcement personnel to expect in such an operation. And it also shows what the priority of law enforcement was. Back up on that one for just a moment. So it would reveal the number of aircraft involved and the number of personnel. That's right. Why is that information that is not specific to this operation and of no ‑‑ it's not a law enforcement technique at all. It's just something individual about this particular law enforcement operation and meaningless outside that context. Well, respectfully, that's just not correct. The way that the DEA plans for this type of operation, it is extensively planned. And there are certain techniques that are used. And one of the techniques that are used is the number of personnel and the number of aircraft assets that are dedicated to the interdiction effort. And the declaration explains a couple of things. That first, if this information becomes public, then that will constrain the options of the DEA in future operations because drug traffickers will know what to expect. And so DEA will have to change its plans accordingly and design imperfect operations accordingly. And in addition, it will ‑‑ if the government doesn't change, if the DEA doesn't change its operations, then drug traffickers or others will know what to expect in this kind of operation. The element of surprise will be compromised. And, you know, real law enforcement interests will be at risk. And that, I think, should give the court great pause. And it's the result that 7E was designed to prevent. You distinguished a drug interdiction operation that has been released on video as being different because it was in an urban environment, it was in another country. But wouldn't ‑‑ didn't the release of that inhibit you or cause exactly the same kind of compromise if you wish to do another drug interdiction operation of that kind in that country in an urban area? So I appreciate the question, and I want to be absolutely clear about the Jamaica video, which I think is the video that you're speaking about. So this is a video that depicts no American law enforcement activity whatsoever. It's a video that the plaintiff, Mr. Schwartz, in this case, described in an article as the efforts of Jamaican law enforcement to extract a dangerous man from a residential neighborhood. So it doesn't depict any American law enforcement activity. And the surveillance craft, which is, I think, what the district court found to be relevant, made no effort to hide from view. It was in broad daylight. It was ‑‑ it made no effort to hide from view. And that is in contrast to what was true in this case, which is that it reveals American law enforcement interdiction efforts and the aircraft had a different flight pattern because it was attempting to hide from view. So that's the Jamaica video. And there are others that the district court thought were relevant. And, again, I urge the court to review those videos because they just are ‑‑ it is apples and oranges. I mean, you have ‑‑ you have, I think, six YouTube clips that depict no law enforcement activity at all. It just depicts various drug ‑‑ suspected drug traffickers under forms of surveillance. There's four videos, I think, that show brief clips of high‑speed chases on open water. And then there is a narco war ‑‑ the narco wars clip, which the district court described as the most relevant, which shows literally nine seconds of footage, nine seconds of surveillance footage, of a Honduran police vessel firing on suspected drug traffickers in open water. And that is simply nothing like the operation in this case. And any techniques and procedures that one could discern from watching those brief clips do not reveal anything close to the breadth and scope and type of information that would be compromised upon the release of this video. Now, the other ‑‑ you were listing the elements. So the first was the number of aircraft and the number of law enforcement personnel involved in the operation would be revealed. And we're focusing now just on the portion that the district court has ordered to be produced. Right. What other information should we be focusing on in the video? So I think, critically, it shows what the priority of law enforcement was after landing. So it shows, you know, whether their intention was to pursue the traffickers or to obtain the drugs. And it also shows the interplay between the aircraft that remained airborne, the aircraft that landed, what was the role of the aircraft that remained airborne, what was the role of the aircraft that landed. So all of this is information that one can discern from the video. It's information that has never been released. And it's information that, if it got into the wrong hands, could do real damage to the DEA's law enforcement interest. Is there anything more specific about the role of the aircraft that landed and the role of the aircraft that didn't? I'm constrained, again, in what I can say in open court. It is in our declaration. And I would point Your Honor to, I think it's paragraph 38 of the under seal declaration, which talks in a little bit more detail about the different roles of the aircraft here. It sounds like you're arguing for a categorical protection. I mean, there is a presumption of disclosure. And as I listen to you, you're really saying that if it shows what American personnel do in a drug interdiction, that just can't be disclosed. And I can't see what the difference is between having airplanes and having vans or having boats. Whatever it is you have, if they're American personnel, it'll be showing what it is they do. And what it is they do is going to indicate how they plan to do things. So I just don't know. I mean, you're talking about airplanes. I understand you're talking about these people in this place. You're talking about it's not urban. But the thing is, any drug interdiction measure that involves American personnel will show what American personnel do. And from that, people can deduce what American personnel intended to do and, therefore, their methods. So I certainly don't mean to be making any sort of categorical argument. The argument that I am making here is that when you have a video that documents the entirety, not a snippet, but the entirety of a sensitive law enforcement operation, that it does stand to reason that that will reveal information and new information about how the DEA. Yes, it stands to reason because there are American personnel doing, I grant you, a complicated, different, dangerous operation. But so will every video recording any drug interdiction operation. Indeed, almost any video showing what police do in a challenging situation will show what their plans are, what their techniques and tactics are. So to the extent that a video or any other agency record would reveal new information about how the DEA or another law enforcement agency investigates crime and information that, if it fell into the wrong hands, could be used to harm those interests, then that is absolutely right, that that is protected. But I do want to emphasize the other side of that coin, which is that if the analysis applied by the district court in this case were appropriate and correct, that is, if you could say that, well, in this video, we have a helicopter, and in this video, we see a boat, and in this video, we see some drug traffickers, and if you put them all together, then that more or less reveals what we have here. If that were the appropriate analysis, then it would be hard to imagine any video of a law enforcement operation that would not have to be disclosed. And there is a real purpose why DEA and other law enforcement agencies record this type of thing. It is to gather evidence in their investigations of international drug trafficking activity. And how would they plan to use that evidence? It depends, it depends, is the answer. It depends on the operation, whether or not it's used in court or whether or not it's just used to follow up for further leads. If it's used in court, it's going to be made public. Well, but it may well just be used to provide further leads to law enforcement. And that's one of the reasons why law enforcement agencies record this type of thing. Another reason is to apply lessons learned. It's to have a record of the operation that they can review afterwards and learn from in planning the next one. And if the district court's judgment releasing the video essentially in its entirety were affirmed, then you would be putting law enforcement agencies to a choice. And the choice is that you can decide that you do want to have this potential evidence and you do want to have this recording. But you have to be willing to release that information to the very targets of the activity. Or make a disclosure as to what those techniques are and how they can be detected in the video, which you have a redacted affidavit seeking to do so. That's right. That's right. And we think that that is the appropriate outcome in this case. Let me, before you sit down, just to clarify your judicial notice point. Are you saying that the material has to be unavailable at the time of the relevant district court proceeding for us to be able to take judicial notice? The general rule is that yes. I think particularly in a FOIA case where the information is designed or where the information is invoked to show that certain withheld records are already in the public domain. That yes, I think that it's appropriate if that information was available at the time of the district court proceeding. Can we take judicial notice at any time so long as the material has been authenticated or deemed reliable? What is the legal support for your proposition? The legal support for the proposition is that although yes, the court, of course, can take judicial notice of legislative facts, the district court normally ought not to take judicial notice of adjudicative facts. And here, these facts seem to us to be adjudicative facts. But even if the court does take judicial notice of them, we think that they're largely cumulative of the information that's already in the record. They don't, again, like the information in the record. They do not reveal anything close to what's revealed in the records here. Can I just ask one other question or maybe a couple questions? You made one set of arguments about the tracking plane's altitude, positioning, airspeed, distance from a target, and the airspeed, altitude, and location of the tracked plane. And as I understand it, that's all somewhat beside the point now because the plaintiff is not seeking that portion of the video. So I think that some of it has been mooted out by the fact that the plaintiff is no longer seeking the portion of the video that just tracks the target plane. But in the same way that the surveillance aircraft or that viewing the video shows sort of the relationship between the surveillance aircraft and the target plane, after the drug traffickers land, the video does show the relationship, the spatial relationship, between the surveillance aircraft and the targets on the ground. Targets on the ground or other aircraft in the vicinity as well? Can you watch this video and obtain information about the distance between the surveillance plane and other aircraft? You can. Well, I'm not totally sure what Your Honor is referring to with respect to other aircraft. There's no indication from the video that there's other drug, suspected drug smuggling aircraft. But with respect to the American aircraft, then yes, that's right. The video does show the sort of spatial relationship between the surveillance craft and the American. And when you say spatial relationship, is that specific? Could an expert discern more about that spatial relationship than a layperson could? Yes, that's right. And that is, again, in the under seal declaration, which essentially says that this provides suspected drug traffickers a roadmap or a map of where to look to determine whether they're being surveilled. Thank you. Thank you. May it please the court. My name is Carl Weedoff of Jenner and Block, New York. I represent Plaintiff Appellee Matthew Schwartz. The DEA's attempt to render public law enforcement activity is unprecedented. It is untethered from the text of the Freedom of Information Act or Exemption 70. It is untethered from applicable precedent, and it is antithetical to the policy that the Freedom of Information Act was designed to promote. It is DEA's burden to establish that the video is exempt. It is not Mr. Schwartz's burden to disprove DEA's claims. It is DEA's burden to identify segregable portions of the video. That's in 552B. It is not Mr. Schwartz's burden to limit the video to portions that he wants. And Mr. Schwartz has made it clear to DEA from the outset of this case that he is interested in a limited portion of the end of the video depicting the use of deadly force against Hondurans. But Mr. Schwartz is not in a position to pick and choose what parts of the video he wants to see without seeing the video. Moreover, a court reviews the government's withholding de novo, not in deference to unsubstantiated conclusions about what a record will reveal. Is there a video in the public domain that is of comparable length to the Hawoos video? We identified the Jamaica video, and Mr. Havenman distinguished that on the grounds that he provided. But our... Can't a viewer discern more about a technique depicted in a video when the video is three hours long as opposed to 10 minutes or 20 minutes? I'm not sure that's right, and I think the text of Exemption 70 is very helpful here. DEA, in its brief, relied on a 1985 case interpreting the National Security Act to reach the conclusion that Exemption 70 ought to be broadly construed. And that's the term they used, that it should be broadly construed. That is in the face of abundant Supreme Court precedent. And I think a more helpful case for this Court to look at is Milner. And Milner is helpful because it says not only are exemptions to be narrowly construed, but they are to be exclusive of one another. And Exemption 70 protects law enforcement records that would, not might or possibly, but would disclose, and that means making something that is secret no longer secret, techniques and procedures. And Judge Rakoff, sitting by designation in the Lowenstein case, explained that those are technical or particular ways of going about an investigation. So you look at the text. It does not simply say law enforcement activity because that would encompass all law enforcement activity or virtually all law enforcement activity. What Milner said, it confronted an argument by the Department of the Navy involving Exemption 2 that is remarkably similar to the argument that DEA is providing here. A, that if this record is released, it's going to compromise the health and safety of our personnel. But that's covered by Exemption 7F. And it also said this just ought to be protected because it risks the circumvention of law. But the circumvention of law is not an inquiry for techniques and procedures in this circuit. And it is an inquiry in the D.C. circuit, and that's a distinction. You're not disagreeing with the logic of decisions like Piper, which makes some sense to me, and I'm not sure it's made out on the basis of this affidavit. But the mere fact that we know that there are things like aerial surveillance, that we know that there is drug interdiction that takes place in other countries, that we know that lots of law enforcement people are involved, that we know there may be more than one aircraft, doesn't mean that watching a three-hour video of an actual operation couldn't provide information about potential surprise methods that agents use in a hope to act efficiently and minimize harm to people in the area, particular types of surveillance they use, the capabilities of cameras when used in an operation. A video could potentially, and I realize you haven't seen it, could potentially reveal all sorts of law enforcement techniques and investigative practices. We agree, Judge Livingston. We don't think that videos are categorically prohibited from this exemption, but we think it's a very difficult showing to make. It's like saying you watch one baseball game and you know all the rules of baseball. I don't think that's right, and I think that the key here is that there are other exemptions that cover all of DEA's claims here. I don't think they're looking to the applicability of other exemptions. I think that the argument is that the revelation of law enforcement investigative practices could have these other harms, but they're focusing on these are, their argument has to be, because I agree with you, this is the only one they're making and they have to make it, but they're saying that there are secret ways we do these broader things that are revealed on this video. It's difficult for us to address the specifics not having seen the video, but we think it's a very difficult showing to make, and it would be peculiar to us if this court were the first court to find that a video depicting public law enforcement activity was protectable under Exemption 70. There is not a single case cited by DEA protecting a video on that ground. There are two cases, one showing the location and timing of surveillance in a Department of Interior poaching case that's showing animals respecting kindness. There's a case called Pravey FBI where you learn the equipment that's used in surveillance, but seeing law enforcement do its job, that's covered by Exemption 7A and Exemption 7F. And moreover, the fact that if you look at the text of Exemption 7, Exemption 7A, Exemption 7C, Exemption 7D, Exemption 7F, they all start with could reasonably be expected. Exemption 7E says would, so it really has to, they have to make a positive showing that this would be disclosed, not just, okay, you see a few airplanes, that shows you how we do our job. And again, we don't think there's any real risk to the DEA here because they can invoke Exemption 7F or Exemption 7A if they feel that that's a concern. And that's what Justice Kagan addressed in Milner. You call this public law enforcement activity. What's public about it? I mean, the only people involved are the people who are doing the operation and the smugglers. You mean because it's out in the open? Yeah, I think actually because it is out in the open, at least in terms of when there's interaction, certainly with non-drug traffickers, as there was here, and there were a number of bystanders in the village. Mr. Schwartz limited his request for the video to keep out the first two hours. As far as we know, there was no- You said he's really only interested in the culmination of the- That's correct, Judge. You don't have to go this far to make your argument, but if you're saying public, that would mean any time law enforcement decides to make a video of anything for training purposes, a SWAT team responds to a home, a search warrant is executed, that that is because there were other people around. There's no possibility there's any law enforcement investigative practice. I mean, all of that would be foyable, any video at that point. Again, to be clear, it's not categorically prohibited, but DEA needs to show that something internal that's not previously known, that is secret, is made public by the video and not something else. And that's why I think our case and the evidence that we've submitted is much, much stronger than the most 70 cases where it is general knowledge from a magazine article. What DEA has done to distinguish those cases is to try to impose a waiver argument, but that's a completely separate doctrine that Judge Amman addresses in pages 23 to 26 of her opinion. I think there is also a plausibility problem, but that's in our brief, and if you don't have any other further questions, thank you. Just a few points in response. First, picking up on your question, Judge Jacobs, I think that much of the issue between us is that Mr. Schwartz begs the question. He begs the question in saying that this information is public, and our position is that that's simply not the case, that nothing about the records that Mr. Schwartz has pointed to makes this operation public or any comparable law enforcement operation public. Second, Judge Livingston, you mentioned Piper a couple of times, and we think that that is the right way to think about this case, that yes, at a certain level of generality, the fact that DEA interdicts drugs is well known. The fact that DEA interdicts drugs in Central America is known. But just as in Piper, the fact that the FBI uses polygraph exams is well known. The question is whether or not revelation of this particular record would reveal anything new about how the government investigates crime, and in this case, we think that that is plainly correct. And finally, I do want to emphasize that we do not claim entitlement to deference in this case, and we certainly do not claim or believe that courts lack the institutional capacity to make these sorts of judgments. Our argument is simply that the district court viewed this video in terms of what was apparent from the video to the court, rather than in terms of what the DEA noted would be apparent to a suspected drug trafficker. And as I noted earlier, you have a declaration before you that says that if this type of information is released to the public, that will harm the element of surprise in future operations. It will constrain law enforcement's ability to plan future operations. And that should give the court great pause, and it is what Exemption 7e was designed to prevent. If there are no further questions, thank you very much. Thank you both for your arguments. The court will reserve its decision, and the clerk will adjourn court. Thank you.